IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **CHRIS BROWN and JAMES D. BEAM,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| vs. ) | |
| ) | Case No. 15-CV-04859-JAR-KGS |
| **DAY AND ZIMMERMAN, INC., f/o/a** ) | |
| **DAY AND ZIMMERMAN, NPS, INC.;** ) | |
| **DANIEL DAVIS, RYAN STATLER,** ) | |
| **WESTAR ENERGY, INC., GARY D.** ) | |
| **HARRIS, MARK SHOEMAKER,** ) | |
| **MATT PROBST, DANIEL BINDER,** ) | |
| **KARL A. SAUVAGE and BRIAN** ) | |
| **MAYER,** ) | |
| ) | |
| **Defendants.** ) | |
| _____) | |

## MEMORANDUM AND ORDER

This matter was removed from Shawnee County, Kansas District Court on March 13, 2015. Before the Court is Plaintiffs' Motion to Remand (Doc. 11), in which Plaintiffs argue that the Court must remand because it lacks subject matter jurisdiction. For the reasons explained below, Plaintiffs' motion is denied.

### I.      Background

Beginning July 2010, Plaintiffs Christopher Lee Brown and James D. Beam, members of the International Boilermakers Union, Local 83, ("Union") worked for Defendant Day & Zimmerman, Inc., ("DZ") as boilermakers at a Westar Energy plant in St. Marys, Kansas. The Union and DZ are parties to a written collective bargaining agreement titled the General Presidents' Project Maintenance Agreement ("CBA") that governs the terms and conditions of employment of Union members. The CBA, in addition to including management rights and a

procedure for employee grievances, allows DZ to implement reasonable project rules and regulations.[1] According to the CBA, Article II: Management Rights, Section 1, I, management has the right to "[d]ischarge, suspend, or discipline employees for proper cause."[2] In January 2014, DZ began an investigation into whether Plaintiffs were taking property from DZ and/or Westar Energy. Several Defendants gave statements about Plaintiffs as part of this investigation. On January 10, 2014, DZ fired Plaintiffs and banned them from the property.

Plaintiffs commenced this action nearly a year later, on January 8, 2015, alleging: 1) tortious interference with a business relationship against Davis, Statler, Harris, Probst, Binder, Sauvage, and Shoemaker; 2) tortious interference with a business relationship against DZ; 3) tortious interference with a business relationship against Westar Energy; 4) defamation against Davis, Statler, Harris, Probst, Binder, Sauvage, Mayer, and DZ; 5) defamation against Davis and Shoemaker; 6) false light against Statler, Harris, Probst, Binder, Sauvage, Mayer, Shoemaker, Davis, and DZ; 7) wrongful discharge against DZ; 8) breach of an oral contract/third party beneficiaries against DZ; and 9) conversion against DZ and Westar Energy. Defendants removed this case pursuant to 28 U.S.C. §§ 1441(a) and 1446, alleging original jurisdiction under 28 U.S.C. § 1331 (federal question).

## II.   Discussion

There is no diversity of citizenship jurisdiction, so subject matter jurisdiction may be conferred only through a federal question. On its face, Plaintiffs' well-pleaded Petition contains only state law claims. Nevertheless, in pleading a cause of action alleging a violation of the

---

[1] Doc. 1, Ex. 3.

[2] *Id.* at 4.

CBA, Plaintiffs have pleaded a cause of action that is completely preempted by § 301 of the Labor Management Relations Act ("LMRA") and is thus federal in nature. The Court therefore must deny Plaintiffs' Motion to Remand.

### A.    The Standard

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."[3] Congress has authorized the federal district courts to exercise original jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States."[4] Federal question jurisdiction exists only over those cases in which either 1) federal law creates the cause of action asserted, or 2) plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.[5] Whether a suit "arises under" federal law is determined by the well-pleaded complaint rule, which provides that federal jurisdiction exists "only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."[6] The plaintiff is the master of the complaint and may eschew claims based on federal law thereby choosing to have the case heard in state court.[7]

A federal claim may nevertheless arise. The "vast bulk of suits that arise under federal law" are from the first category, where federal law creates the cause of action.[8] In a much

---

[3]28 U.S.C. § 1441(a).

[4]28 U.S.C. § 1331.

[5]*Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 689–90 (2006).

[6]*Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

[7]*Id.* at 398–99.

[8]*Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013).

narrower category are state law claims that "implicate significant federal issues."[9] These claims fall within a limited exception to the well-pleaded complaint rule, which is grounded in "the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."[10]

The issue presented by the Motion to Remand is whether Plaintiffs' state law claims can raise an issue of federal law that is substantial enough to warrant the exercise of federal question jurisdiction. There is a presumption against finding federal jurisdiction.[11] The burden of proving jurisdiction lies with the party asserting it exists.[12]

### B.    Complete Preemption

One of the exceptions to the well-pleaded complaint rule is the "complete preemption doctrine."[13] This doctrine allows courts to exercise jurisdiction over complaints that, "although not presenting federal questions on their face, nonetheless present state law claims that are *preempted* by federal law."[14] The Supreme Court has said that although preemption is ordinarily a defense, complete preemption is different.[15] The Court noted a "corollary of the well-pleaded complaint rule . . . is that Congress may so completely pre[]empt a particular area that any civil

---

[9]*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005); *see also Empire*, 547 U.S. at 699 (explaining that such claims are in a "special and small category" of federal "arising under" jurisdiction).

[10]*Grable*, 545 U.S. at 312.

[11]*Devon Energy Prod. Co. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1201 (10th Cir. 2012).

[12]*Id.*

[13]*Garley v. Sandia Corp.*, 236 F.3d 1200, 1207 (10th Cir. 2001).

[14]*Id.* (emphasis original).

[15]*Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64 (1987).

complaint raising this select group of claims is necessarily federal in character."[16] Thus, once "an area of state law has been completely pre[]empted, any claim purportedly based on that pre[]empted state law is considered, from its inception, a federal claim, and therefore arises under federal law."[17] The Supreme Court has recognized complete preemption as to three federal laws: 1) the Employee Retirement Income Security Act of 1974 ("ERISA);[18] 2) the Labor Management Relations Act ("LMRA");[19] and 3) the National Bank Act.[20]

This case relates to the preemptive scope of § 301 of the LMRA.[21] The Court has recognized § 301 preemption two different ways: 1) the claim alleges violation of a CBA,[22] or 2) it requires interpretation of the terms of a CBA.[23] The first always results in preemption.[24] The

---

[16]*Id.*

[17]*Garley*, 236 F.3d at 1207 (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987)); *see also Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 24 (1983) ("[I]f a federal cause of action completely preempts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law.").

[18]*See Metro. Life*, 481 U.S. at 66–67.

[19]*Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557, 560 (1968).

[20]*Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 11 (2003).

[21]Section 301 is codified as 29 U.S.C. § 185. Subsection (a) provides: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

[22]*Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985) (discussing *Local 174, Teamsters, Chauffeurs, Warehousemen and Helpers of Am. v. Lucas Flour Co.*, 369 U.S. 95 (1962)) ("[T]he Court in *Lucas Flour* held that a suit in state court alleging a violation of a provision of a labor contract must be brought under § 301 and be resolved by reference to federal law.")

[23]*Garley v. Sandia Corp.*, 236 F.3d 1200, 1208 (10th Cir. 2001) (noting "the Supreme Court has made clear that the preemptive effect of § 301 is *not* limited to state suits alleging violations of labor contracts").

[24]*Allis-Chalmers*, 471 U.S. at 210; *see also Caterpillar*, 482 U.S. at 399 ("When a plaintiff invokes a right created by a collective-bargaining agreement, the plaintiff has *chosen* to plead what we have held must be regarded as a federal claim, and removal is at the defendant's option.") (emphasis original).

second is more complicated and requires a case-by-case analysis that sometimes results in preemption and sometimes does not.[25] The preemptive scope of § 301 extends to any claim interpreting a CBA because the "interests in interpretive uniformity and predictability . . . require that the meaning given a contract phrase or term be subject to uniform federal interpretation."[26] When a state law claim requires interpretation of CBA terms, the Supreme Court's test for determining preemption is whether the claim is "inextricably intertwined" with the terms of the labor contract.[27]

Plaintiffs argue that Defendants removed this action on the basis of a defense, that of preemption. The general rule is that a defense to a claim does not suffice to support federal subject matter jurisdiction.[28] This general rule "retains its force" even when LMRA complete preemption is at issue.[29]

Defendants argue that Plaintiffs have resorted to "artful pleading" to avoid federal law and that resolution of Plaintiffs' claim of wrongful discharge is "inextricably intertwined" with interpretation and/or application of the terms of the CBA. Defendants further allege that Plaintiffs' other claims are preempted as well because they are likewise "inextricably intertwined."

---

[25]*See In re Bentz Metal Prods. Co., Inc.*, 253 F.3d 283, 289 (7th Cir. 2001) (collecting cases).

[26]*Garley*, 236 F.3d at 1208 (quoting *Allis-Chalmers*, 471 U.S. at 211).

[27]*Allis-Chalmers*, 471 U.S. at 213.

[28]*Crosby v. Cooper B-Line, Inc.*, 725 F.3d 795, 800–01 (7th Cir. 2013) *cert. denied*, 134 S. Ct. 1298 (2014) (citing *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998)).

[29]*Id.* at 801 (quoting *Caterpillar*, 482 U.S. at 398–99 ("the presence of a federal question, even a § 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule—that the plaintiff is master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court.")).

1.      **Plaintiffs Claim a Violation of the CBA**

Having reviewed the arguments on both sides and the binding precedent of this district, the Court must conclude here that Plaintiffs have essentially pleaded a federal claim. The Court therefore need not resort to an "inextricably intertwined" analysis or determine whether Defendants attempt to use preemption defensively.[30] Plaintiffs' Petition alleges: "DZ terminated the plaintiffs' employment with DZ without just cause *as required by the contract* between DZ and the International Boilermakers Union, Local 83."[31] This alleged violation of the CBA falls squarely within § 301 preemption. The LMRA conveys exclusive federal jurisdiction over lawsuits concerning the violation of contracts between an employer and a labor organization.[32]

The Court is mindful of the substantiality requirement as well as the presumption against finding federal jurisdiction and the burden on Defendants. But as the Supreme Court states: "[T]he pre[]emtive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization. Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301."[33] As such, the Court views the wrongful discharge claim as a federal claim, from its inception, that Plaintiffs have chosen to plead.[34] The Petition therefore on its face

---

[30]Such an exercise would likely be equally brief. In the Tenth Circuit claims of wrongful discharge are preempted by section 301 because an employer's alleged liability requires interpretation and/or application of the CBA provisions governing employee discharge. *Sauders v. Amoco Pipeline Co.*, 927 F.2d 1154, 1156 (10th Cir. 1991), *cert denied* 112 S. Ct. 264 (1991).

[31]Doc. 1, Ex. 1, at 10 (emphasis added).

[32]29 U.S.C. § 185(a).

[33]*Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 23 (1983) (internal quotations omitted).

[34]*See Caterpillar*, 482 U.S. at 399.

presents a federal question and subject matter jurisdiction is proper.[35]

### 2.     Supplemental Jurisdiction

Having established that federal question jurisdiction exists, the Court has discretion to exercise supplemental jurisdiction over claims so related that they form part of the same case or controversy.[36]  Such claims are "those state law claims that derive from a common nucleus of facts."[37]  Plaintiffs' claims appear to derive from such a common nucleus of facts.  The three tortious interference claims, the two defamation claims, the false light, and the breach of oral contract all derive from the investigation relating to potential theft and subsequent firing of Plaintiffs.  The conversion claim refers to personal property Plaintiffs kept at the power plant and have been unable to recover since being banned from the property.  "Judicial economy and fairness result from retaining jurisdiction over mixed state and federal claims where "The state and federal claims . . . derive from a common nucleus of operative fact.'"[38]  The Court therefore exercises its discretion to retain supplemental jurisdiction over the remaining claims.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiffs' Motion to Remand to State Court (Doc. 11) is **denied**.

**IT IS SO ORDERED**.

Dated: July 20, 2015

---

[35]Although Defendants have argued that all of Plaintiffs' claims are preempted by § 301, the Court need not make such a finding in order to have jurisdiction to hear this case, and declines to do so at this point.

[36]28 U.S.C. § 1367(a).

[37]*Hawkins v. Mercy Kansan Cmtys., Inc.*, No. 14-CV-2405-EFM-KGG, 2015 WL 3796073, at *2 (D. Kan. June 18, 2015) (quoting *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1220 (10th Cir. 2000)).

[38]*Estate of Harshman v. Jackson Hole Mountain Resort Corp.*, 379 F.3d 1161, 1165 (10th Cir. 2004) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)).

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE